UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROSS HACK, and LELAND JONES,<br><br>Defendants. | 2:12-CR-00063-PMP-CWH<br><br>ORDER |

Presently before the Court are the Government's Motion in Limine to Admit at Trial Defendant Leland Jones's ("Jones") Statements (Doc. #241), and Defendant Ross Hack's ("Hack") Motion to Sever (Doc. #197). The Court conducted a hearing regarding both fully briefed Motions on July 7, 2014.

The parties are familiar with the underlying allegations in the Indictment and the Court will not repeat the facts here except as necessary to explain the Court's ruling. By its Motion in Limine, the Government moves to admit at trial against both Defendants Jones and Hack, Defendant Jones's statements to witnesses Jason Rudder ("Rudder"), Kimberly Champlin ("Champlin"), Ryan Hartung, and John Butler ("Butler") regarding the murders of Lin Newborn ("Newborn") and Daniel Shersty ("Shersty"). Defendant Jones does not oppose the Government's Motion in Limine, but Defendant Hack objects on hearsay and Confrontation Clause grounds. Defendant Hack also requests severance of his trial from that of co-Defendant Jones.

## I. BACKGROUND

A summary of the statements the Government seeks to offer through the above witnesses is useful to frame the issues presented, and to explain the Court's conclusions that the Government's Motion in Limine should be granted, and Defendant Hack's Motion for Severance should be denied.

Rudder told the FBI and a grand jury that he is a former skinhead who attended skinhead social functions with Defendants Jones and Hack, among others, in the late 1990's. (Mot. in Limine ["MIL"], Ex. A, Dec. 19, 2011 FD-302 of Jason Rudder at 1–2, Ex. B, Rudder Grand Jury Tr. at 8–11, 23, 31, 35–36.) Rudder stated that on the night of July 4, 1998, Jones came into a bar with Ross Hack and others, and told people something to the effect of "we did it." (MIL, Ex. A at 2, Ex. B at 35–38, 43.) According to Rudder, while driving to a worksite where he and Jones worked together several years after the murders, Jones told Rudder that he committed the murders with John Butler, Ross Hack, Daniel Hartung, Melissa Hack, and Mandie Abels. (MIL, Ex. A at 4, Ex. B at 54.) Rudder further related that Jones said when Melissa Hack and Mandie Abels came out to the desert with the victims, Hack was supposed to give the command to start shooting. (MIL, Ex. A at 4, Ex. B at 54.) Jones said that Hack appeared to hesitate but eventually gave the signal to start shooting. (MIL, Ex. A at 4, Ex. B at 54–55.) Jones said that one of the victims ran after the shooting started, at which point Butler and Jones chased the running victim. (MIL, Ex. A at 4, Ex. B at 55–56, 67.) Jones said Melissa Hack screamed, "Kill him! Kill him!" (MIL, Ex. A at 4, Ex. B at 55–56.) Jones said he was concerned Butler might shoot Jones instead of the running victim. (MIL, Ex. A at 4, Ex. B at 56.) Jones said that he shot at the victim who ran. (MIL, Ex. A at 4, Ex. B at 55.) According to Rudder, Jones added that one of the victims said, "I don't know you. Why are you doing this?" (MIL, Ex. A at 4, Ex. B at 56.) Rudder asserted that he asked if Jones felt bad about the murders, and Jones replied that he did not. (MIL, Ex. A at 4, Ex. B at 58.) According to Rudder, Jones was bragging

and showed no remorse.  (MIL, Ex. A at 4, Ex. B at 57–58.)

Champlin told the FBI she dated Jones from 1999 to 2000.  (MIL, Ex. F, Mar. 1, 2012, FD-302 of Kimberly Champlin at 1.)  Champlin stated that Jones drove Champlin and another couple into the desert outside of Las Vegas.  (Id.)  Once they were home, Champlin asked Jones why they went out in the desert.  (Id.)  According to Champlin, Jones told her that they were at the location where he murdered Newborn and Shersty, and that it was the second anniversary of the murders.  (Id.)  When Champlin asked if Jones had been investigated by the police for the murders, Jones stated that the police came looking for the murder weapons and shoes, but he had already gotten rid of them.  (Id. at 2.)

Ryan Hartung, Daniel Hartung's brother, told a grand jury that he is a former skinhead who attended skinhead social functions in the late 1990's with Defendants Jones and Hack, among others.  (MIL, Ex. C, Jan. 17, 2012 FD-302 of Patrick Ryan Hartung at 1, Ex. E, Grand Jury Tr. of Ryan Hartung at 3, 8–12.)  After reading an article about the murder of one of the victims, Ryan Hartung asked Jones if he knew anything about the information in the article.  (MIL, Ex. C at 1, Ex. D, Jan. 23, 2012 FD-302 of Patrick Ryan Hartung at 1; Ex. E at 16–17, 19–20.)  According to Ryan Hartung, Jones said something to the effect of, "That was me."  (MIL, Ex. C at 1, Ex. D at 1.)  Jones clarified that two people had been killed, not just the one person identified in the article.  (MIL, Ex. D at 1.)  Jones told Ryan Hartung that Mandie Abels and Melissa Hack led the victims out to the desert by convincing them they were going to a party.  (MIL, Ex. D at 1, Ex. E at 20–21.)  Jones stated that Jones shot Shersty in the face once the victims were both out of the car.  (MIL, Ex. D at 1, Ex. E at 20–21.)  Jones stated that the second victim ran, and Butler and Ross Hack chased and killed this second victim.  (MIL, Ex. D at 1, Ex. E at 21.)  Jones said Shersty was trying to say something when Daniel Hartung struck Shersty in the head with the stock of his gun.  (MIL, Ex. D at 1–2, Ex. E at 21–22.)  Jones told Ryan Hartung that when the group left the desert, the two victims were dead.  (MIL, Ex. D at 2, Ex. E at 22.)

1          Butler was convicted of the murders of Newborn and Shersty in Nevada state
2 court in 2001.  (MIL, Ex. G, Grand Jury Tr. of John Butler at 2–3, 81.)  Butler told a grand
3 jury about several statements he recalled Jones making about the murders.  (See, e.g., id. at
4 42, 64.)  Butler stated that during the planning stage of the murders, Jones said Shersty
5 would not recognize Jones.  (Id. at 42.)  According to Butler, on the night after the incident,
6 Jones said he was antsy during the incident and that Jones just pulled his gun out and started
7 shooting.  (Id. at 64.)
8          Defendant Jones does not admit he made the foregoing statements, but does not
9 oppose their admission against him at trial.  The Court finds they are admissible against
10 Jones under Federal Rule of Evidence 801(d)(2)(A).
11          The Government contends Jones's statements also are admissible against
12 Defendant Hack because they fall within the hearsay exception of Federal Rule of Evidence
13 804(b)(3) as statements against interest made by an unavailable witness.  The parties agree
14 Jones is unavailable because he has a Fifth Amendment right not to testify.  The
15 Government asserts the statements are self-inculpatory statements by Jones because Jones
16 admitted to participating in the murders, his identification of accomplices demonstrates
17 inside knowledge of the murders, and the non-custodial context demonstrates the statements
18 were not made in an effort to shift blame or curry favor.  Further, the Government contends
19 the statements are trustworthy because they are corroborated by statements from Jones's
20 accomplices, some of whom the Government also will call as witnesses at trial.  Moreover,
21 according to the Government, Jones's statements are credible because he made them to
22 people he trusted and to whom he had no reason to lie.  The Government therefore asserts
23 the statements are admissible under Rule 804(b)(3).  Finally, the Government contends
24 Jones's statements are not testimonial and thus do not violate the Confrontation Clause
25 because the statements were not made to law enforcement or in a formal custodial setting.
26 ///

Defendant Hack concedes that Jones's statements are admissible against Jones, but argues they are inadmissible against him. Hack contends that Jones's statements to Champlin are inadmissible because Hack is never mentioned in these statements. Hack further argues the statements Jones made to other witnesses are inherently unreliable against Hack because they are hearsay statements offered by the prosecution to establish the guilt of an alleged accomplice. Moreover, Hack asserts that the witnesses who related Jones's statements are unreliable because they were currying favor with the Government and attempting to shift blame. Hack also contends that Jones was a co-conspirator, and the statements were not made during the furtherance of the conspiracy, making the statements inadmissible against Defendant Hack under Federal Rule of Evidence 801(d)(2)(E). Finally, Hack contends that prejudice resulting from the admission of Jones's statements in a joint trial requires severance.

**II. ADMISSIBILITY UNDER FEDERAL RULE OF EVIDENCE 804(b)(3)**

Under the Federal Rules of Evidence, hearsay is generally inadmissible. Fed. R. Evid. 802. Rule 804(b)(3) carves out an exception to this general prohibition when the declarant is unavailable as a witness and the statement is against the declarant's penal interest. To admit a statement against penal interest under Rule 804(b)(3), the proponent who seeks to admit the statement must show that the declarant is unavailable as a witness, the statement so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless they believed it to be true, and corroborating circumstances clearly indicate the trustworthiness of the statement. Fed. R. Evid. 804(b)(3); United States v. Paguio, 114 F.3d 928, 932 (9th Cir. 1997).

Rule 804(a) lists several criteria for determining the availability of a witness. A defendant who invokes his Fifth Amendment privilege against self-incrimination is legally unavailable to testify at a co-defendant's trial. Padilla v. Terhune, 309 F.3d 614, 618 (9th

5

Cir. 2002); Fed. R. Evid. 804(a)(1).  Thus, assuming Jones declines to testify at trial, he must be deemed to be unavailable.

The requirement that the statement be self-inculpatory against the declarant can be determined only by context.  Williamson v. United States, 512 U.S. 594, 603 (1994).  "The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true, and this question can only be answered in light of all the surrounding circumstances."  Id. at 603–04 (quotation omitted).  Whether a statement is in fact self-inculpatory against the declarant is a matter of "common sense."  Paguio, 114 F.3d at 934.  For instance, a statement containing details that a reasonable person realizes would implicate them in a crime may be self-inculpatory.  Williamson, 512 U.S. at 603.  However, "an accomplice's statements that shift or spread the blame to a criminal defendant" fall outside the hearsay exception, because they are not unambiguously against the penal interest of the declarant.  Lilly v. Virginia, 527 U.S. 116, 132–33 (1999).  Instead, they may be attempts to minimize the declarant's culpability.  Id.

Nevertheless, if the context demonstrates that the statements are truly self-inculpatory, and were not made in an attempt to "shift blame or curry favor," the statements may be admissible under Rule 804(b)(3), even when they inculpate another defendant.  Williamson, 512 U.S. at 603.  When the declarant makes statements in a non-custodial setting before being arrested for a crime, the statements may be admissible because the obvious incentive of an accomplice to shift blame is not present.  United States v. Boone, 229 F.3d 1231, 1234 (9th Cir. 2000).  For example, when a declarant makes a statement in a private setting, which the declarant believes to be free from police involvement, and the declarant freely inculpates himself without mitigating his own role in the crime, it is admissible against a co-conspirator defendant under Rule 804(b)(3).  Id.
///

As to the last element, corroboration of trustworthiness refers to the circumstances surrounding the declarant's statement, not the witness who testifies about the statements. Padilla, 309 F.3d at 620. "The credibility of the witness remains an issue for the trier of fact once the statement has been admitted." Id. Corroboration of trustworthiness is a fact-specific inquiry. Id. at 619. Testimony of other witnesses consistent with the declarant's statements can corroborate the declarant's statements. Paguio, 114 F.3d at 933. Additionally, if the declarant makes the statements to a close friend, in a private setting, with no reason to believe the police will become involved, and unabashedly incriminates himself without mitigating his own conduct, this context can corroborate the trustworthiness of the statements. See Padilla, 309 F.3d at 619; Boone, 229 F.3d at 1234.

In accord with the foregoing standards, the Court finds that Jones's statements are admissible against Defendant Ross Hack under Rule 804(b)(3) as statements against interest by an unavailable witness. The parties agree that Jones is legally unavailable as a witness because of his Fifth Amendment privilege against self-incrimination. The Government has met its burden of demonstrating that Jones's statements are self-inculpatory. Jones made these statements in private settings to friends or acquaintances before he was arrested for a crime. All of his statements, even those that inculpate Hack, establish that Jones had knowledge of, was present for, and participated in the murders of Newborn and Shersty. Jones freely inculpated himself and made no effort to mitigate his role in the crime.

Finally, the Government has shown corroborating circumstances that demonstrate the trustworthiness of Jones's statements. There is a discrepancy between Rudder's and Ryan Hartung's testimony about Jones's statements, but the discrepancy is not enough to undermine the credibility of Jones's statements. Two of Jones's co-conspirators are government witnesses whose testimony is generally consistent with Jones's statements.

Moreover, neither Rudder's nor Ryan Hartung's testimony about Jones's statements minimizes Jones's role in the murders.  Finally, the private, non-custodial settings in which Jones made his statements provide a contextual guarantee of trustworthiness, because Jones was speaking freely to acquaintances or friends, inculpating himself in two murders without attempting to shift blame.  Jones's statements were so far against his penal interest that a reasonable person would not have made them unless believing them to be true, and corroborating circumstances demonstrate the trustworthiness of the statements.

Hack further argues that Jones statements are inadmissible against him in accord with Lilly v. Virginia, 527 U.S. 116 (1999), contending that such statements are inherently suspect, and not truly against the declarant's penal interest.  The Lilly Court ruled that accomplice confessions are presumptively unreliable because of the obvious incentive for a captured accomplice to shift blame.  Id. at 132–33.  However, the confession at issue in Lilly was obtained by police during an in-custody interrogation.  Id. at 120–21.  Since Lilly was decided, the Ninth Circuit has affirmed the admission of private statements by an accomplice against a criminal defendant under Rule 804(b)(3), in Boone and Padilla.  In these cases, the Ninth Circuit distinguished the Lilly accomplice's custodial confession from private statements made without a motive to shift blame.  This case is similar.  Jones made his statements to friends outside the presence of law enforcement, before he was arrested, when he had no incentive to shift blame and in fact he did not shift blame.  The Court therefore concludes that the holding in Lilly is inapplicable to Jones's statements.

Defendant Hack also focuses on the witnesses who recounted Jones's statements, arguing that they are unreliable because they relayed the statements in testimonial settings while attempting to shift blame and curry favor with investigators.  The credibility of these witnesses, who will appear in court and be subject to cross-examination, is a question for the jury.  It does not factor into the Court's consideration of whether Jones's statements are admissible under Rule 804(b)(3).

## III. ADMISSIBILITY OF OUT-OF-COURT STATEMENTS UNDER THE CONFRONTATION CLAUSE

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The clause prevents the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). The Confrontation Clause is inapplicable to out-of-court non-testimonial statements, even if the statements lack indicia of reliability. Whorton v. Bockting, 549 U.S. 406, 420 (2007). Therefore, the key question under the Confrontation Clause is whether an out-of-court statement is testimonial. Davis v. Washington, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

"Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford, 541 U.S. at 51 (quotation omitted). In general, testimonial statements are made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for use at a later trial. See id. at 51–52. Thus, a person who makes a casual remark to an acquaintance does not "bear testimony" under the Confrontation Clause. Id. at 51.

The admission of Jones's statements at trial would not violate Defendant Hack's rights under the Confrontation Clause. Jones's statements were not testimonial because he had no reason to believe that they would be used in a future criminal prosecution. Jones's statements were casual remarks to acquaintances in informal settings, not solemn declarations made for the purpose of establishing some fact. Because Jones's statements are non-testimonial out-of-court statements, the Court concludes the Confrontation Clause

does not apply.

## IV. ADMISSIBILITY UNDER FEDERAL RULE OF EVIDENCE 801(d)(2)(E)

Federal Rule of Evidence 801(d)(2)(E) provides that a statement offered against an opposing party, made by that party's co-conspirator during and in furtherance of the conspiracy, is admissible. To admit the statement of a co-conspirator against a criminal defendant under Rule 801(d)(2)(E), the Government needs to show "by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy." United States v. Bowman, 215 F.3d 951, 960–61 (9th Cir. 2000).

Rule 801(d)(2)(E) arguably applies to Jones's statement to Butler that Shersty would not recognize Jones. Jones made this statement during the planning stage of the murders, and it was made in furtherance of the murder plot. Therefore it was a statement by a co-conspirator, during the course of, and in furtherance of a conspiracy. While the Court has already held that this statement is admissible under Rule 804(b)(3), it also is independently admissible under Rule 801(d)(2)(E).

## V. DEFENDANT JONES'S STATEMENTS TO CHAMPLIN AND BUTLER

Defendant Hack opposes the admission of Jones's statements to Champlin against Hack because Hack is not mentioned in these statements. Hack does not raise this argument with respect to Jones's statements to Butler, but Hack is not mentioned in those statements either. The basis for Hack's objection is unclear, and he offers only one sentence of argument and does not cite any law. The Government did not address this argument in Reply. Even though these statements do not mention Hack, they establish that Jones participated in and had knowledge of the murders. Hack has provided no basis to exclude such statements at a joint trial.

///

## VI. DEFENDANT HACK'S MOTION TO SEVER

Defendant Hack's Motion to Sever is dependent on his responses to the Government's Motion in Limine. As the Court will grant the Government's Motion in Limine, the Court also will deny Hack's Motion to Sever.

## VII. CONCLUSION

**IT IS THEREFORE ORDERED** that the Government's Motion in Limine (Doc. #241) is **GRANTED,** and that Defendant Hack's Motion to Sever (Doc. #197) is **DENIED.**

DATED: July 8, 2014

_____
PHILIP M. PRO
United States District Judge